IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.                                        Criminal No.   18-252

MATTHEW JAMES KITE

## UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM

AND NOW comes the United States of America, by its attorneys, Cindy K. Chung, United States Attorney for the Western District of Pennsylvania, and Benjamin J. Risacher, Assistant United States Attorney for said District, and respectfully files the following Sentencing Memorandum:

Upon consideration of all the factors set forth in Title 18, United States Code, Section 3553(a), the United States requests that the Court sentence Defendant Matthew James Kite to a term of imprisonment at the top of the guideline range: 97 months imprisonment.

The Court is required to give "meaningful consideration" to all of the relevant Section 3553(a) factors.  *Gall v. United States*, 552 U.S. 38 (2007); *United States v. Larkin*, 629 F.3d 177, 197 (3d Cir. 2010); *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006).  However, the Court need not discuss each factor if the record makes clear that the Court took all relevant factors into account in imposing sentence.  *United States v. Thornhill*, 759 F.3d 299 (3d Cir. 2014); *Cooper*, *supra*, 437 F.3d 329.

## I.    FACTUAL AND PROCEDURAL CONTEXT

On September 27, 2018, the federal grand jury returned a three-count Indictment, charging Mr. Kite at Count 1 with Receipt of Material Depicting the Sexual Exploitation of a Minor, occurring on October 15, 2017, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1) and with

Possession of Material Depicting the Sexual Exploitation of a Minor, occurring on October 26, 2017 (Count 2) and April 18, 2018 (Count 3), in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2).

On December 16, 2019, Mr. Kite pleaded guilty to Count Two and Count Three of the Indictment, pursuant to a plea agreement, which was detailed on the record at the hearing.   Per his plea agreement, Mr. Kite stipulated that the following sentencing enhancements are applicable based upon the facts and evidence supporting the charge:

a.      that the base offense level should be raised by two (2) levels pursuant to § 2G2.2(b)(2) because the material involved a prepubescent minor or minor who had not attained the age of 12 years;

b.      that the base offense level should be raised by four (4) levels pursuant to § 2G2.2(b)(4) because the material portrays the sexual abuse or exploitation of an infant or toddler;

c.      that the base offense level should be raised by two (2) levels pursuant to § 2G2.2(b)(6) because a computer was used to commit the offense;

d.      that the base offense level should be raised by five (5) levels pursuant to § 2G2.2(b)(7)(D) because the material, comprised of images and videos, constitutes at least 600 images for sentencing purposes.

Mr. Kite also agreed that he acknowledges responsibility for the conduct charged in Count One of the Indictment and stipulates that the conduct charged in that count may be considered by the Probation Office or by the Court in calculating the guideline range and in imposing sentence.

2

As noted in the PSIR, the conduct charged in Count One would have increased the base offense level from 18 to 22.   PSIR ¶ 21.

As the Court is aware, the Department of Homeland Security Investigations (HSI) was investigating the sharing of child sexual abuse material over the internet through a peer-to-peer network called BitTorrent.   Agents downloaded a file that the computer associated with IP address 98.239.173.161 was making available through BitTorrent.   The video that agents downloaded from the above IP address had a child-exploitation-related file name, and depicted a prepubescent minor female and adult male engaged in sexually explicit conduct.   On April 4, 2017 and May 21, 2017, HSI agents downloaded additional files from the above IP address through BitTorrent. These files also depicted minors engaged in sexually explicit conduct.

Next, on October 26, 2017, agents executed a search warrant at the home associated with the above IP address, seizing multiple computers, phones, and cameras.   Mr. Kite resided at the home but was not present during the search.   However, Mr. Kite was later interviewed and admitted he was involved in viewing and downloading child pornography and that he used his mobile phone to engage in the activity.   Forensic review of one of Mr. Kite's cell phones revealed 66 videos and 3 images depicting child pornography.   And a review of Mr. Kite's laptop revealed an additional 151 images of child sexual abuse material.

Despite the search warrant and the interview, Mr. Kite was undeterred.   Approximately five months after the execution of the first search warrant at Mr. Kite's home, his IP address was, again, associated with the distribution of child pornography via a peer-to-peer network.   On March 25, 2018, PSP, using BitTorrent, downloaded a file that the computer associated with that IP address was making available through BitTorrent. The video downloaded from that IP address

had a child-exploitation-related file name, and depicted multiple prepubescent minor females, ranging in age from three months old to two years old. Video segments depict an adult male engaging in sexually explicit conduct with the minors, such as vaginal penetration of, and ejaculation onto, the infants/toddlers.

A second search warrant was then executed at Mr. Kite's residence on April 18, 2018.   Mr. Kite was present and agents found another 30 images of child sexual abuse material.   Mr. Kite agreed to be interviewed and provided a written statement.   Mr. Kite's handwritten April 18, 2018 statement begins:   "I have admitted in doing the crime I am being investigated for.   I DO NOT want to keep doing this and am going to try my hardest to seek help.   I feel that I am out of control with this entirely. . . . it feels as if my actions are involentary [sic], I have struggled in executing a plan to permanently stop this."

## II.    CONSIDERATION OF THE 3553(a) FACTORS

### a.  The Nature and Circumstances of the Offense (§ 3553(a)(1))

It is beyond dispute that the sexual exploitation of minors is a very serious crime.    This is reflected by defendant's advisory guideline range—his total offense level is 28 and, with a Criminal History category of I, the resulting guideline imprisonment range is 78 – 97 months imprisonment.    PSIR at ¶ 70.   However, as noted above, Mr. Kite is also stipulating that the conduct at Count One may be considered by the Court.    The PSIR states that, had Mr. Kite pled guilty to Count One, his base offense level would have started at 22, an increase of 4-levels.    PSIR ¶ 71.    Therefore, the Court can, and should, consider this offense conduct in sentencing Mr. Kite. Had Mr. Kite's total offense level been 32, it would have resulted in an advisory guidelines range of 121-151 months imprisonment.    As such, a sentence of 97 months imprisonment, which

represents the top of Mr. Kite's advisory guidelines range under his guilty plea and plea agreement, should be imposed in order to account for the offense conduct at Count One of the Indictment.

Congress has explicitly recognized that child pornography offenses are "crimes of violence."  *See* 18 U.S.C. § 3156.   "An offender's pornography and erotica collection is the single best indicator of what he wants to do."  KENNETH V. LANNING, OFFICE OF JUVENILE JUSTICE AND DELINQUENCY PREVENTION, CHILD MOLESTERS: A BEHAVIORAL ANALYSIS–FOR PROFESSIONALS INVESTIGATING THE SEXUAL EXPLOITATION OF CHILDREN, 107 (5TH ED. 2010).

Using children to produce graphic, sexual images is a form of sexual abuse which can cause mental and physical harm to a child.  *United States v. Champion*, 248 F.2d 502, 506 (6th Cir. 2001).   "The 'victimization' of the children involved does not end when the camera is put away." *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998).   The consumer of child pornography contributes to the harm to victims who are the subject of child pornography: (1) the abuse is perpetuated through instantaneous and world-wide dissemination, (2) the existence of the image is a permanent violation of the child's privacy, and (3) the demand for the creation of more images is fueled by the consumer.  *Norris*, 159 F.3d at 929-30.   Consumers of child pornography, whether they are involved in production, contribute to the cycle of abuse and are in part responsible for the psychological and physical harm of the children used to produce the images.  *United States v. Yeaple*, 605 F. Supp. 85, 86 (M.D. Pa. 1985); *see also*, *United States v. Ferber*, 458 U.S. 747, 759 (1982).

The seriousness of defendant's crime is underscored by the profound and lasting impact it has on its child victims.  *See* U.S. Sentencing Comm'n, *Report to Congress: Federal Child Pornography Offenses*, at vi (December 2012), *available*

5

*at* http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf   (child pornography offenses "result in perpetual harm to victims and validate and normalize the sexual exploitation of children").   The victims live in fear that the people they interact with have viewed the sexual abuse images and will recognize them, leading to difficulty in maintaining jobs, relationships, and an increase in alcoholism later in life.   *See id.* at 112-13.   These victims "suffer by knowing that their images are being used by offenders for sexual gratification and potentially for 'grooming' new victims of child sexual abuse."   *Id.* (footnote omitted).   The impact of this offense on Mr. Kite's victims is made evident by the numerous Victim Impact statements (10) submitted to the Court in this case.

Moreover, no matter how Mr. Kite may try to minimize it, his crime was not one of mere possession.   The very nature of the manner in which Mr. Kite amassed his collection of child sexual abuse material—peer-to-peer networks—allowed others to do the same.   As one of our Sister Circuits has explained:

> A peer-to-peer network allows a user to download files directly from the computers of other users in the network.   In order to facilitate faster downloads, a peer-to-peer program often downloads fragments of the desired file from many different computers on the network.   By using such a program to obtain the files of others on the network, a user makes it possible for others to obtain his files. . . . [O]n most BitTorrent programs, any file a user has downloaded to his computer is automatically accessible to others on the network when the user's computer is connected to the Internet.   A user's downloaded files are placed in a folder on his computer where other users of the online network can download and view them.

*United States v. Clarke*, 979 F.3d 82, 87 (2d Cir. 2020) (internal citations omitted).   Mr. Kite admitted to using file-sharing software (BitTorrent) to download his collection of child exploitation material but claimed that he did not have full knowledge of how file-sharing software

worked.

**b.  History and Characteristics of the Defendant (§ 3553(a)(1))**

The defendant's reported family relationships, employment history, lack of criminal history, and cooperation with law enforcement weigh in his favor.   The government notes that in the "vast majority" of child pornography possession cases, defendants come before the court without a prior criminal history or as a Criminal History Category I.   *United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007).

**c.  Seriousness of the Offense, Respect for the Law, Just Punishment (§ 3553(a)(2)(A))**

The law is clear that child pornography crimes warrant stringent sentences.   The Court of Appeals for the Third Circuit has expressed disapproval of extremely lenient, below guideline range sentences in these cases.   In *United States v. Goff*, 501 F.3d 250 (3d Cir. 2007), the district court sentenced a child pornography defendant to four months of imprisonment, even though the applicable guideline range was 37 to 46 months.   The Third Circuit vacated the sentence and remanded for sentencing, holding that such a lenient sentence was unreasonable.   *Id.* at 262. The court reasoned that the district court gave short shrift to the Sentencing Guidelines and did not properly consider a variety of 3553 factors.   Goff downplayed the seriousness of the offense by implying that it was a victimless crime, which was a solitary, private activity driven by his curiosity of the subject.   The Third Circuit rejected these claims as follows:

> Children are exploited, molested, and raped for the prurient pleasure of Goff and others who support suppliers of child pornography. These small victims may rank as no one else in Goff's mind, but they do indeed exist outside his mind. Their injuries and the taking of their innocence are far too real. There is nothing casual or theoretical about the scars they will bear from being abused for Goff's advantage. Far from persuading us that Goff's crime was relatively minor, his efforts to downplay the harm his actions have inflicted on others serve chiefly to highlight

7

the concern the District Court should have had with Goff's failure to appreciate the seriousness of the offense.

*Id.* at 258-59.    Goff also argued that he was entitled to a downward departure/variance because he never acted out in any sexual way with children.    *Id.* at 259.    The Third Circuit dispatched this assertion:

> He was not charged with molestation, so pointing out that he hadn't committed it is, in one sense irrelevant. In another more important sense, however, it does say something meaningful, albeit not what the defense intended. While the defense effort to draw a spectator-vs-participant distinction does not show that Goff's pornography crime was of less than ordinary severity, it does reemphasize that Goff failed to fully appreciate that severity. The simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials.

*Id.*    The Court criticized the district court's reliance upon Goff's lack of criminal history because many child pornography defendants are first time offenders.    *Id.* at 260-61 (citing *United States v. Grinbergs*, 470 F.3d 758, 761 (8th Cir.2006) (the district court erred when it deemed an offense "atypical simply because the defendant had not committed other crimes.")).

The United States urges the Court to similarly fashion a sentence that recognizes the seriousness of Mr. Kite's offense while providing for just punishment.    A sentence at the top of the guideline range accomplishes this goal, particularly after the Court considers the offense conduct at Count One.

### d.  Deterrence (§ 3553(a)(2)(B))

Deterring the sexual exploitation of minors must be given significant weight at sentencing—children are the most defenseless members of our society and exploiting a child's innocence by seeking out and possessing child sexual abuse material is an egregious crime. Practically speaking, severe criminal penalties for those who commit crimes exploiting children is critical to drying up the market and decreasing demand for material that exploits children.  *See*

8

*Goff*, 501 F.3d at 261 (reversing the district court and stating: "The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it, and so the more it will be produced. . . . deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing . . . .").

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence.  *See United States v. Ferber*, 458 U.S. 747, 760 (1982) ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product"); *Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand").  Accordingly, this factor includes the deterrence of the defendant in the instant case, as well as those who many consider similar offenses in the future. *See United States v. Bistline*, 720 F.3d 631, 634 (6th Cir. 2013).

Moreover, as the *Schrank* court pointed out: "[c]hild pornography offenses happen in the shadows, making it difficult to apprehend perpetrators . . . .  It is thus especially important that courts impose sentences sufficient to deter this clandestine criminal conduct."  2020 WL 5511980, at *2.

### e.  Protect the Public (§ 3553(a)(2)(C))

Research focused on federal offenders published in the Journal of Sexual Aggression underscores the grave risk that crimes like possession and distribution of child pornography pose

to children.   The lack of physical contact in these offenses has fostered a frequent, erroneous assumption that "these offenders are somehow distinct from child molesters (i.e., 'hands-on' abusers)" and therefore not deserving of guideline sentences.   M.L. Bourke, et. al., *The Use of Tactical Polygraph with Sex Offenders*, J. of Sexual Aggression 1, 5 (2014).   (The authors of this article were exclusively federal researchers or investigators, from the U.S. Marshals Service, FBI, U.S. Postal Inspection Service, U.S. Secret Service and U.S. Attorney's Office).

Significantly, in a sample of 127 suspects with no known history of hands-on offending, only 4.7% admitted sexually offending against at least one child victim.   During polygraph, an additional 52.8% of the men tested disclosed hands-on sexual abuse.   *Id.* at 17.   The researchers drew the following conclusions from their work: 1) researchers, treatment providers, and legal officials should avoid placing offenders into groups labeled as "hands-off" based on the absence of such crimes in their criminal histories; 2) the study affirmed extant research that child pornography offenders are sexually attracted to children, and that a large percentage of these individuals have victimized at least one child via an act of hands-on sexual abuse; 3) "significant crossover" exists between contact and non-contact child exploitation because of the shared motivational pathway – sexual interest in children.   *Id.* at 11, 20-21.

Mr. Kite's criminal conduct in this case demonstrates a sexual interest in prepubescent children.   And not just prepubescent children—but also toddlers and infants—Mr. Kite possessed video materials featuring multiple prepubescent minor females, ranging in age from three months old to two years old.   Video segments depict an adult male engaging in sexually explicit conduct with the minors, such as vaginal penetration of, and ejaculation onto, the infants/toddlers.   Mr. Kite is a danger to children.

10

**f.   Need to Avoid Sentencing Disparity (§ 3553(a)(6))**

Mr. Kite has committed serious child pornography crimes in a manner that triggered several fact-based enhancements.   "Sentencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly.   That was the main goal of the Sentencing Reform Act.   The more out-of-range sentences that judges impose . . .the more disparity there will be."   *United States v. Shrake*, 515 F.3d 743, 748 (7th Cir. 2008).

## III.   RESTITUTION

The child sexual abuse material seized from Mr. Kite was submitted to the National Center for Missing and Exploited Children (NCMEC) to identify known victims.   As detailed in the PSIR and the Supplemental Addendum to the PSIR (Doc. No. 89), a number of victims have come forward and submitted restitution requests.   Pursuant to 18 U.S.C. § 3663A, restitution is mandatory, and the government asks this Court to Order restitution to the victims listed in the PSIR and the Supplemental Addendum in the amounts requested.

## IV.   VICTIM IMPACT

It is the practice of this district to inform the Court and counsel of any Victim Impact Statements by submission through the U.S. Probation Office.   The government has thus submitted a number of Victim Impact Statements to the Court for consideration at the sentencing hearing. Further, it is the United States' position that in the event that any victim appears at Mr. Kite's hearing and asks to be heard, the Court should prohibit the victim from being subjected to cross-examination.

11

## V.      FORFEITURE

In accord with the plea agreement, the government requests that the Court order forfeiture of defendant's multiple electronic and other devices.   Plea Agreement at ¶ 6; PSIR at ¶ 82.

## VI.      SPECIAL ASSESSMENTS / FINES

Despite the defendant's limited assets, as detailed within the PSIR, the government submits that this Court should order that Mr. Kite pay a special assessment under the Justice for Victims of Trafficking Act in an amount of $5,000.00.   Such an Order should be secondary to any victim's restitution request.

## VI.      CONCLUSION

For all the foregoing reasons, the United States submits that this Court should conclude that a sentence at the top of the guideline range (97 months imprisonment) is warranted, provides just punishment, and is not greater than necessary to address defendant's crimes and the factors set forth at 18 U.S.C. § 3553(a).

Respectfully submitted,

CINDY K. CHUNG
United States Attorney

*s/ Benjamin J. Risacher*
BENJAMIN J. RISACHER
Assistant United States Attorney
PA ID No. 318436

12